UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

EUGENE WADE CLOWERS,           )
                               )
        Petitioner,            )
                               )
v.                             )        Case Nos. 4:06-cr-11 / 4:09-cv-99
                               )        Judge Edgar
UNITED STATES OF AMERICA,      )
                               )
        Respondent.            )

## MEMORANDUM AND ORDER

Federal prisoner Eugene Wade Clowers moves pursuant to 28 U.S.C. § 2255 for post-conviction relief. [Court Doc. No. 37].  After reviewing the record, the Court concludes that the motion will be denied and dismissed with prejudice.  The record conclusively shows that the motion is without merit and Clowers is not entitled to any relief under § 2255.  There is no need for an evidentiary hearing.

## I.     Statute of Limitations, 28 U.S.C. § 2255(f)(1)(a)

The government argues that the § 2255 motion should be dismissed on the ground it is time-barred by the one-year statute of limitation in 28 U.S.C. § 2255(f)(1)(a).  The Court concludes that the § 2255 motion is not time-barred.

28 U.S.C. § 2255(f)(1)(a) provides that the one-year limitation period commences to run from the date on which the judgment of conviction becomes final.  A judgment of conviction becomes final at the conclusion of direct review. *Brown v. United States*, 20 Fed. Appx. 373 (6th Cir. 2001); *Shropshire v. United States*, 2011 WL 4064704, * 2 (E.D. Tenn. Sept. 13, 2011).

On June 2, 2008, the Sixth Circuit Court of Appeals affirmed the judgment of conviction and sentence, and dismissed the direct appeal.  *United States v. Clowers*, 280 Fed. Appx. 496 (6th Cir.

1

2008).  Clowers had 90 days within which to file a petition for writ of certiorari with the United

States Supreme Court.  Rule 13, Rules of the Supreme Court of the United States.  His judgment of

conviction became final when the 90-day time limit for filing a petition for writ of certiorari in the

Supreme Court expired on September 1, 2008.  *Clay v. United States*, 537 U.S. 522, 532 (2003);

*Johnson v. United States*, 2012 WL 171379, * 2 (6th Cir. Jan. 23, 2012); *Shropshire*, 2011 WL

4064704, at * 2; *Campbell v. United States*, 2009 WL 3415162, * 2 (E.D. Tenn. Oct. 19, 2009).  The

one-year statute of limitation under 28 U.S.C. § 2255(f)(1)(a) commenced to run on September 1,

2008.  The deadline for Clowers to file his § 2255 motion was September 1, 2009.

On September 22, 2009, the Clerk of this District Court received by mail Clower's *pro se*

motion for post-conviction relief under 28 U.S.C. § 2255. [Court Doc. No. 37].  Clowers was in the

custody of the United States Bureau of Prisons at the Federal Correctional Complex (FCC), United

States Penitentiary (USP) in Tuscon, Arizona.  To determine the date when Clowers filed his § 2255

motion, the Court applies the prisoner mailbox rule.  The § 2255 motion is deemed to be filed when

Clowers delivered it over to the proper prison officials for mailing.  *Houston v. Lack*, 487 U.S. 266,

270-72 (1988); *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008); *Anderson v. United States*, 39

Fed. Appx. 132, 135-36 (6th Cir. 2002); *Towns v. United States*, 190 F.3d 468, 469 (6th Cir. 1999).

There is a dispute concerning the date when Clowers delivered his § 2255 motion to prison

officials for mailing.  The motion is dated as being signed by Clowers on August 28, 2009.

Accompanying the § 2255 motion is a cover letter dated August 29, 2009, which is signed by

Clowers and addressed to the Court Clerk's office in Winchester, Tennessee.  This does not

necessarily mean that Clowers actually delivered his § 2255 motion to prison officials for mailing

on August 28-29, 2009.  The envelope containing the § 2255 motion is post-marked as being mailed

from FCC/USP Tucson on September 10, 2009.  This postmark is not conclusive proof that Clowers

2

delivered his § 2255 motion to prison officials for mailing on September 10, 2009. It is possible that Clowers could have delivered his § 2255 motion to prison officials prior to September 10, 2009, but the prison officials delayed mailing it.

Based on the envelope showing the postmark of September 10, 2009, the government contends that Clowers mailed his § 2255 motion on September 10, 2009. If true, this mailing would have occurred after the September 1, 2009, deadline for Clowers to file his § 2255 motion had elapsed and the motion would be time-barred by the statute of limitation, 28 U.S.C. § 2255(f)(1)(a).

Clowers asserts that he delivered his § 2255 motion to prison officials at USP Tuscon for mailing on August 28, 2009. Clowers submits his declaration to this effect signed under penalty of perjury pursuant to 28 U.S.C. § 1746. [Court Doc. No. 45-2, p. 2]. Giving Clowers the benefit of the doubt and in the absence of any additional evidence from the prison officials at USP Tuscon, the Court finds that he delivered his § 2255 motion to federal prison officials for mailing on August 28, 2009. *See e.g. Brand*, 526 F.3d at 925; *Goins v. Sanders*, 206 Fed. Appx. 497, 498 n. 1 (6th Cir. 2006); *United States v. Damon*, 59 Fed. Appx. 619, 621 (6th Cir. 2003); *Anderson*, 39 Fed. Appx. at 135-36; *Towns*, 190 F.3d at 469. Applying the prisoner mailbox rule, the Court finds that Clowers effectively filed his § 2255 motion on August 28, 2009, within the applicable statute of limitations. His § 2255 motion is not time-barred by the statute of limitations.

II.    **Facts and Procedural History**

The background and facts of this case are set forth by the Sixth Circuit in *Clowers*, 280 Fed. Appx. 496. On January 17, 2004, a 17-year old female, Ashley Bennett, was reported missing from her residence in Estill Springs, Tennessee. Tennessee law enforcement officers investigated and determined that Bennett was living with Clowers in Columbia, South Carolina. The police obtained information that Clowers was having sexual relations with Bennett. A police officer with the Estill

Springs Police Department made a sworn affidavit of criminal complaint against Clowers for statutory rape. Based on a clear showing of probable cause, a state court in Franklin County, Tennessee issued a warrant for Clower's arrest.

On January 30, 2004, local law enforcement officers in Columbia, South Carolina arrested Clowers on the statutory rape charge pursuant to the Tennessee arrest warrant. After being arrested, Clowers indicated that Bennett was at a local shopping mall, where she was found.

On February 2, 2004, a state court in Richland County, South Carolina issued a valid search warrant authorizing the search of Clowers' residence for any evidence of child pornography and exploitation of a minor. [Court Doc. No. 40-1, p. 14]. During the execution of the search warrant, deputies from the Richland County Sheriff's Department seized three computers from Clowers along with numerous videotapes and photographs of suspected child pornography.

One of the seized videotapes contained footage of Clowers engaging in sexual activity with Ashley Bennett. A portion of the videotape depicted Bennett bound in handcuffs and a rope, blindfolded and nude, while Clowers fondled her. Another portion of the videotape depicted Bennett performing oral sex on Clowers.

The police also seized a videotape containing footage of Clowers digitally manipulating the vagina of a ten-year old girl during a bath while forcing the girl to hold his penis. The same videotape showed Clowers positioning his penis near the mouth of the ten-year old girl while she was sleeping in a chair.

On February 4, 2004, Clowers was interviewed by investigators in South Carolina. During the interview, Clowers admitted that he had broadcast video over the Internet of Bennett performing oral sex on him. Clowers identified the ten-year old girl on the videotape as his niece, Jessica Mangrum, in Tennessee.

4

Investigators showed Ashley Bennett a photograph taken from a videotape, and Bennett identified herself, Clowers, and the location depicted. Bennett said that she and Clowers started having sexual relations in the summer of 2003 when she was 17 years old. Bennett ran away from home and asked Clowers for help in leaving Tennessee. In January 2004, Clowers transported Bennett by automobile from Tennessee to his residence in Columbia, South Carolina. Bennett further told investigators that on one occasion, Clowers blindfolded her while she was naked, tied her hands above her head, and videotaped Clowers fondling her. On another occasion, Clowers set up a web camera and broadcast video in an Internet chat room of Bennett performing oral sex on Clowers. On two occasions during the summer of 2003, Clowers videotaped himself having sexual intercourse and oral sex with Bennett.

Three computers seized from Clowers during the execution of the search warrant were turned over to a computer laboratory at the South Carolina Law Enforcement Department for forensic analysis and processing. Officials in South Carolina were able to recover 1,017 deleted images from one of the computers. Hundreds of deleted images depicted nude children in various non-sexual poses, four images depicting minor females engaged in sexual acts, and eleven videos depicting minors engaged in sexual acts. On another computer, investigators in South Carolina found a large number of images and videos depicting minors engaged in sexual acts.

Investigators interviewed Angela Mangrum, the sister of Clowers. Angela Mangrum is the mother of the ten-year old niece depicted in the videotape that was seized from Clowers. Mangrum told investigators that she was informed by her daughter of the incident depicted on the videotape two years after it had occurred. Mangrum told investigators that she and her younger brother, Adam Clowers, were sexually abused by Eugene Wade Clowers when they were children. She said that Clowers threatened to kill her and Adam, while displaying guns and martial arts weapons, if either

5

of them told their parents about the sexual abuse inflicted on them by Clowers.

Investigators interviewed Kendra Sebastian, a former girlfriend of Clowers. Sebastian said that she began seeing Clowers when she was fourteen years old and Clowers was ten years older than her. Sebastian had a sexual relationship with Clowers for about one to one and a half years. She said that on various occasions Clowers forced her to have sex with him and other men under threats of violence. Sebastian said that on one occasion, Clowers performed oral sex on her younger sister who was then twelve or thirteen years old.

On July 22, 2004, Clowers pleaded guilty in South Carolina to two counts of sexual exploitation of a minor (Ashley Bennett) in the second degree in violation of South Carolina Code Ann. § 16-3-655. He was sentenced to five years imprisonment on each charge, with the sentences to run concurrently.

South Carolina released custody of Clowers to federal authorities pursuant to a federal detainer. On April 25, 2006, the federal grand jury in the Eastern District of Tennessee returned a two-count indictment against Clowers. [Court Doc. No. 1]. Clowers pleaded guilty to Count One pursuant to a plea agreement. Count One charged that Clowers used, persuaded, induced, and enticed a minor (Ashley Bennett) to engage in, with the intent that the minor engage in, sexually explicit conduct, i.e. oral-genital sexual intercourse, for the purpose of producing a visual depiction of the sexually explicit conduct, knowing and having reason to know that such visual depiction would be transported in interstate commerce by means of a computer, and actually transported such visual depiction in interstate commerce by means of interstate travel from Tennessee to South Carolina and by means of computer over the Internet, all in violation of 18 U.S.C. § 2251.

Count Two charged that Clowers used, persuaded, induced, and enticed a minor to engage in, with the intent that the minor engage in, sexually explicit conduct, i.e. lascivious exhibition of

the genitals of the minor (the defendant's ten-year old niece), for the purpose of producing a visual depiction of the sexually explicit conduct, such visual depiction having been actually transported in interstate commerce by means of interstate travel from Tennessee to South Carolina, in violation of 18 U.S.C. § 2251. In other words, Clowers was charged with making the sexually explicit videotape of his ten-year old niece, the daughter of Angela Mangrum, in Tennessee and transporting the pornographic videotape from Tennessee to South Carolina. The facts in this case fully support Count Two. As part of the plea agreement, Count Two was dismissed on motion of the government.

The plea agreement executed by Clowers on October 16, 2006 [Court Doc. No. 14] provides in part:

> 3. The defendant has read the indictment, discussed the charges and possible defenses with defense counsel, and understands the crime charged. The defendant is pleading guilty because the defendant is in fact guilty.
>
> 4. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts. These facts are submitted for the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.
>
> ### Factual Basis
>
> While executing a Tennessee arrest warrant for statutory rape upon Clowers in Columbia South Carolina, local police observed numerous computers and pornographic material inside Clower's residence. During execution of a search warrant subsequently obtained, South Carolina authorities seized numerous items of child pornography. Among the videotapes seized was one containing footage of Clowers engaged in sexual activity with a minor, Ashley Bennett, that was filmed in Estill Springs, Tennessee, within the Eastern District of Tennessee, during the summer of 2003. After advice of rights and a signed waiver, Clower admitted filming the minor performing sexual acts broadcast by him live over the internet via web-cam viewing by others. The minor victim in Tennessee has confirmed that Clowers did produce the images on the film during the summer of 2003 in the Eastern District of Tennessee

7

and had broadcast them on the internet via web-cam. The film was transported from Tennessee to Columbia, South Carolina by Clowers when he relocated there in early 2004. We have correspondence sent from Clowers to the victim showing that he knew that she was a 17-year-old minor.

Clowers was rearraigned and entered his guilty plea on November 8, 2006 pursuant to Fed. R. Crim. P. 11. Clowers appeared before this Court for sentencing on February 4, 2007. Counsel for Clowers raised various arguments and objections concerning the computation of his criminal history score in the presentence investigation report (PSR) which were denied by this Court. Clowers raised an objection concerning whether he committed certain conduct described in the section of the PSR captioned "Offense Behavior Not Part of Relevant Conduct." The Court adjourned the sentencing hearing to allow Clowers time to file a brief stating his specific objections to that portion of the PSR.

Counsel for Clowers filed the brief on February 28, 2007. [Court Doc. No. 24]. Clowers disputed that he had forced or used threats to accomplish the sexual acts described by Angela Mangrum. Clowers emphasized that the sexual activities involving Mangrum took place approximately thirty years ago when Clowers was approximately eleven years old. Clowers also denied all allegations of force or the threat of force made by Kendra Sebastian. Clowers denied that he forced Sebastian to have sex with other men. Clowers stated that he did not recall the incident of oral sex with Sebastian's younger sister and, therefore, he denied it. Clowers denied all allegations by Mangrum and Sebastian that he used force, threats, intimidation, or other violent means to obtain sexual favors. Clowers acknowledged that differences in age can inherently be coercive (he was older than his alleged victims) but he denied knowingly utilizing any other forms of coercion.

In his sentencing brief, Clowers did not deny that law enforcement officers may have

8

recovered a large number of deleted images (child pornography) from his computers as described in the PSR. Clowers contended that the deleted images most likely accumulated in his computer server which he owned for his Internet service company, and that these images would have been uploaded by various third-party Internet users without his knowledge. Clowers took the position that he would not have been aware of the content of such uploaded images of child pornography until he began reviewing and deleting them. Counsel for Clowers argued that the deleted computer images should not be considered by the Court for sentencing purposes since their deletion is inconsistent with the allegation that the images were used by Clowers as pornography. It was also argued that this conduct was already being used as the basis for the guilty plea and conviction on the state criminal charges in South Carolina which resulted in a sentence of five years imprisonment. Defense counsel argued that Clowers should receive no more than the mandatory statutory minimum sentence of 15 years imprisonment. Counsel provided Clowers with reasonable, competent legal representation by raising all plausible or debatable legal arguments and objections to the PSR.

On March 7, 2007, this District Court resumed the sentencing hearing and took up the objections to the PSR raised by Clowers. The Court informed Clowers that he was entitled to have a jury resolve the disputed issues of fact and information in the PSR. After a brief recess during which Clowers conferred with his counsel, Clowers made a knowing and voluntary waiver of his right to have a jury make findings of fact. Based on the waiver, this Court proceeded to hold an evidentiary hearing without a jury.

The government presented the testimony of Angela Mangrum and Kendra Sebastian at the sentencing hearing. Mangrum testified that Clowers regularly threatened her and her younger brother, Adam, with physical harm, even using a drill at one point on Adam's arm. Adam Clowers was deceased at the time of the sentencing hearing on March 7, 2007. Mangrum said she feared that

Clowers would physically harm her if she did not engage in sexual acts with Adam, with Clowers, and with friends of Clowers. After hearing Mangrum's testimony, the Court found beyond a reasonable doubt that Clowers had threatened Mangrum with violence and used force to compel her to engage in sexual activity.

Sebastian testified to the following. When she was fifteen years old, Clowers threatened her at gunpoint when Sebastian told Clowers that she wanted to end their relationship. Clowers forced Sebastian to have sex hundreds of times, and he would cut her with razor blades if she would not have sex with other men in his presence. Clowers coerced and forced Sebastian to have sex with other men on ten to fifteen occasions. Clowers performed oral sex on Sebastian's then twelve-year old sister and he forced the girl to perform oral sex on Clowers. After hearing Sebastian's testimony, this Court found that Clowers used force and threats, at least part of the time, to compel the sexual activity described by Sebastian. The Court found that Clowers used razor blades, knives, and guns to make those threats. At the time this occurred Sebastian was only fourteen or fifteen years old.

In its opinion on direct appeal, the Sixth Circuit states that the District Court essentially found that Clowers had a decades-long history of committing violent or otherwise deviant sexual acts against several young victims. The Sixth Circuit determined that the District Court was justified in weighing this conduct under 18 U.S.C. § 3553(a)(2)(C) in favor of imposing a sentence of imprisonment significantly longer than that provided by the advisory Sentencing Guidelines. *Clowers*, 280 Fed. Appx. 502.

Clowers did not testify and did not offer any evidence at the sentencing hearing. The Court calculated his offense level as 24, which together with a criminal history category IV, resulted in an advisory guideline range of 79 - 96 months imprisonment. This Court found that the advisory

10

Guidelines sentence was embodied in the statutory mandatory minimum sentence of 180 months under 18 U.S.C. § 2251(e). After applying the relevant factors in 18 U.S.C. § 3553(a), this Court found that a sentence higher than the Guidelines range and the statutory mandatory minimum was warranted. On March 7, 2007, this Court sentenced Clowers to 360 months imprisonment, to be followed by a life term of supervised release. The sentence of 360 months imprisonment is the statutory maximum under 18 U.S.C. § 2251(e). The judgment of conviction was entered on March 9, 2007. [Court Doc. No. 30].

Clowers took a direct appeal from the judgment of conviction and sentence to the Sixth Circuit Court of Appeals. On June 2, 2008, the Sixth Circuit affirmed the judgment of conviction and sentence, and dismissed the appeal. *Clowers*, 280 Fed. Appx. 496. The Sixth Circuit decided that the sentence of 360 months imprisonment is both procedurally and substantively reasonable. The sentence imposed was correct and there was no sentencing error.

## III.    Standard of Review Under 28 U.S.C. § 2255

28 U.S.C. § 2255(a) provides that a federal prisoner may make a motion to vacate, set aside, or correct a judgment of conviction or sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the federal district court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by federal law, or is otherwise subject to collateral attack.

As a threshold standard to relief a § 2255 motion must allege: (1) an error of constitutional magnitude; (2) a sentence was imposed outside the federal statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire criminal proceeding invalid. *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445,

11

454 (6th Cir. 2003); *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001).

Clowers bears the burden of establishing an error of federal constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

To obtain relief under § 2255 for a nonconstitutional error, Clowers must establish either: (1) a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice; or (2) an error so egregious that it amounts to a violation of due process. *Reed*, 512 U.S. at 353-54; *Hill v. United States*, 368 U.S. 424, 428 (1962); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Watson*, 165 F.3d at 488; *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998); *Grant v. United States,* 72 F.3d 503, 505-06 (6th Cir. 1996). Where nonconstitutional issues are at stake, there is no basis for allowing a collateral attack under § 2255 to do service for a direct appeal. *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Grant,* 72 F.3d at 506.

An evidentiary hearing is unnecessary because there are no genuine issues of material fact in dispute and the record conclusively shows that Clowers is not entitled to relief under § 2255. An evidentiary hearing is not required where his allegations and claims cannot be accepted as true because they are contradicted by the record, inherently incredible, or mere conclusions rather than statements of fact. *Amr v. United States*, 280 Fed. Appx. 480, 485 (6th Cir. 2008); *Valentine v. United States*, 488 F.3d 325, (6th Cir. 2007); *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999); *Brain v. United States*, 2011 WL 1343344, * 2 (E.D. Tenn. April 8, 2011); *Jones v. United States*, 2010 WL 1882122, * 1 (E.D. Tenn. May 11, 2010).

12

The burden is on Clowers to articulate sufficient facts to state a viable claim for relief under § 2255. Vague, conclusory claims which are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant an evidentiary hearing. A § 2255 motion may be dismissed if it only makes conclusory statements without substantiating allegations of specific facts and fails to state a claim cognizable under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *Brain*, 2011 WL 1343344, at * 2; *Jones*, 2010 WL 1882122, at * 2.

## IV.    Standard of Review:  Sixth Amendment Ineffective Counsel and *Strickland* Test

The Sixth Amendment to the United States Constitution provides that in all criminal prosecutions, the accused shall have the to right to assistance of counsel for his defense. Ineffective assistance of counsel that violates the Sixth Amendment occurs when an attorney's deficient performance causes actual prejudice to the criminal defendant. *Lockhart v. Fretwell*, 506 U.S. 356, 369 (1993); *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Sowell v. Bradshaw*, 372 F.3d 821, 836 (6th Cir. 2004).

*Strickland* establishes a two-part test for deciding Sixth Amendment claims of ineffective counsel. First, Clowers must show that his attorney's performance was deficient. Second, Clowers is required to demonstrate that his counsel's deficient performance caused him actual prejudice. *Strickland*, 466 U.S. at 687; *Sowell*, 372 F.3d at 836-37; *Griffin*, 330 F.3d at 736; *Smith v. Mitchell*, 348 F.3d 177, 199 (6th Cir. 2003); *Mason v. Mitchell,* 320 F.3d 604, 616 (6th Cir. 2003); *Wickline v. Mitchell,* 319 F.3d 813, 819 (6th Cir. 2003); *Skaggs v. Parker*, 235 F.3d 261, 266-67 (6th Cir. 2000).

The first prong of the *Strickland* test requires Clowers to show that his attorney's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88;

*Sowell*, 372 F.3d at 836; *Wickline,* 319 F.3d at 819; *Carter v. Bell*, 218 F.3d 581, 591 (6th Cir. 2000); *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996); *Green v. United States*, 65 F.3d 546, 551 (6th Cir. 1995). The Court's scrutiny of the reasonableness of defense counsel's performance is highly deferential. Counsel is strongly presumed to have rendered adequate legal assistance and to have made all decisions in the exercise of reasonable professional judgment and sound strategy. *Nix v. Whiteside*, 475 U.S. 157, 165 (1986); *Strickland*, 466 U.S. at 689-90 (strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance); *Sowell*, 372 F.3d at 837; *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Mason,* 320 F.3d at 616-17; *Wickline,* 319 F.3d at 819; *Skaggs*, 235 F.3d at 268; *Austin v. Bell*, 126 F.3d 843, 848 (6th Cir. 1997); *West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996); *O'Hara v. Wigginton*, 24 F.3d 823, 838 (6th Cir. 1994).

Strategic choices made by an attorney after thorough investigation of the relevant facts and law are virtually unchallengeable. Strategic choices made by counsel after less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitation or restriction placed on the investigation. Defense counsel has a duty to make a reasonable investigation under the circumstances or to make a reasonable decision that a particular investigation is unnecessary. *Strickland*, 466 U.S. at 690-91; *Skaggs*, 235 F.3d at 268.

The second prong of the *Strickland* test requires Clowers to show that his attorney's deficient performance caused actual prejudice to his case. *O'Hara*, 24 F.3d at 828; *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993). The prejudice component focuses on the question whether counsel's deficient performance renders the result of the criminal proceeding unreliable or fundamentally unfair. *Lockhart*, 506 U.S. at 372; *Skaggs*, 235 F.3d at 270. The Court must determine whether the performance of counsel was so manifestly deficient that defeat was snatched

14

from the hands of probable victory. *Thelen v. United States,* 131 Fed. Appx. 61, 63 (6th Cir. 2005); *West*, 73 F.3d at 84; *Lewis*, 11 F.3d at 1352; *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc).

To satisfy the prejudice element, Clowers must show there is a reasonable probability that, but for the errors and deficient performance of counsel, the result in this case would have been different and more favorable to him. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the criminal proceeding. *Strickland*, 466 U.S. at 693-94; *Humphress*, 398 F.3d at 859; *Campbell*, 364 F.3d at 730; *Griffin*, 330 F.3d at 736; *Mason,* 320 F.3d at 617; *Wickline,* 319 F.3d at 819; *Skaggs*, 235 F.3d at 270-71; *Carter*, 218 F.3d at 591; *Arredondo*, 178 F.3d at 782; *Austin*, 126 F.3d at 848; *West*, 73 F.3d at 84. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

Clowers was convicted and sentenced based on a plea agreement and his voluntary, intelligent guilty plea. As part of the guilty plea, Clowers admitted under oath that he is guilty of the facts underlying Count One. A voluntary and intelligent guilty plea made by a defendant who has been advised by competent counsel may not be collaterally attacked under 28 U.S.C. § 2255. *United States v. Broce*, 488 U.S. 563, 574 (1989); *cf. Mabry v. Johnson*, 467 U.S. 504, 508 (1984).

In some cases, a defendant may be able to show that his guilty plea was not a voluntary and intelligent act because his attorney rendered ineffective assistance of counsel in violation of the Sixth Amendment. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *Ray v. Rose*, 491 F.2d 285, 289-90 (6th Cir. 1974); *Beasley v. United States*, 491 F.2d 687 (6th Cir. 1974). Where a claim of

ineffective counsel is made in a § 2255 proceeding in the context of a guilty plea, the prejudice prong of the *Strickland* test is adjusted. Clowers is required to allege and show there is a reasonable probability that, but for his counsel's errors and deficient performance, Clowers would not have executed the plea agreement, he would not have pleaded guilty to Count One, and he would have insisted on going to trial on both Counts One and Two in the indictment. *Hill*, 474 U.S. at 58-59; *Humphress*, 398 F.3d at 858-59; *Griffin*, 330 F.3d at 736-37; *Miller v. Straub*, 299 F.3d 570, 578 (6th Cir. 2002); *Ludwig v. United States*, 162 F.3d 456, 458 (6th Cir. 1998); S*ullivan v. United States*, 11 F.3d 573, 576 (6th Cir. 1993); *Brain*, 2011 WL 1343344, at * 8; *Cordell v. United States*, 2008 WL 4568076, *6 (E.D. Tenn. Oct. 14, 2008); *United States v. Lujan*, 2006 WL 2706790, ** 5-10 (E.D. Tenn. Sept. 15, 2006); *Mayes v. United States*, 93 F. Supp.2d 882, 890 (E.D. Tenn. 2000).

Clowers makes no such allegation or claim here. Clowers does not allege and fails to show there is a reasonable probability that, but for his counsel's alleged deficient performance, Clowers would not have executed the plea agreement, would not have pleaded guilty to Count One, and would have insisted on going to trial on both Counts One and Two in the indictment.

## V. <u>Analysis</u>

The Court finds that Clowers has not met his burden of showing that he is entitled to relief under 28 U.S.C. § 2255 on any of his claims. Clowers has not established an error of federal constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. With regard to his claims of nonconstitutional error, Clowers has not established that there was either a fundamental defect in the criminal proceedings which necessarily resulted in a complete miscarriage of justice or an error so egregious that it amounts to a violation of due process.

16

With regard to the myriad allegations and claims by Clowers of ineffective counsel, the Court finds that Clowers has not met his burden of demonstrating either prong of the *Strickland* test. Clowers has not established that his counsel's performance was deficient and fell below an objective standard of reasonableness. Clowers fails to show that his counsel's performance caused him any actual prejudice. Clowers cannot establish there is a reasonable probability that, but for the alleged deficient performance of his counsel, the result in this case would have been different and more favorable to him.

Based on the facts and the applicable law, Clowers is guilty and he has been correctly convicted and sentenced under Count One for violating 18 U.S.C. § 2251. He is not actually (factually) innocent. The imposition of the statutory maximum sentence of 360 months imprisonment under 18 U.S.C. § 2251(e) is correct and there is nothing presented by Clowers in his § 2255 motion that would cause this Court to change its decision and reduce the sentence.

A.      **First Claim: Attack on Validity of Tennessee Arrest Warrant**

Clowers claims that his conviction has been obtained by the use of evidence derived from an unlawful arrest. He contends that the Tennessee arrest warrant based on the statutory rape complaint was not issued by a neutral and detached judge. Clowers alleges that the arrest warrant was issued by a "Judge Davis." It is argued that Judge Davis was not impartial since he had recused himself in Ashley Bennett's juvenile case in Franklin County, Tennessee "due to his involvement with the Bennett family." Clowers vaguely asserts that Judge Davis had an unspecified business and personal relationship with Paul Bennett, the father of Ashley Bennett. However, Clowers does not provide any facts and details to explain the nature and basis of this alleged business and personal relationship between Judge Davis and Ashley Bennett's father.

Clowers claims he is entitled to relief under 28 U.S.C. § 2255 on the theory that: (1) Judge

Davis should not have issued the Tennessee warrant for the arrest of Clowers on the statutory rape complaint on the theory that Judge Davis was not a neutral and detached or impartial judge; and (2) the incriminating evidence used by the United States against Clowers in federal court was obtained as a result of the execution of the Tennessee arrest warrant in South Carolina.

This claim fails. Clowers has not presented a copy of the Tennessee arrest warrant signed by a "Judge Davis." All this Court has before it is a copy of the Tennessee affidavit of criminal complaint signed by a police officer with the Estill Springs Police Department which does not show the name and signature of the Tennessee state judge or court clerk in Franklin County, Tennessee who actually issued the arrest warrant pursuant to Rule 4 of the Tennessee Rules of Criminal Procedure. [Court Doc. No. 43-2, p. 5]. It appears that Clowers may be referring to attorney Floyd Don Davis who served as Judge of the General Sessions Court in Franklin County, Tennessee from about 1982 through March 2004.

Respondent United States submits an affidavit from attorney C. Eugene Shiles who represented Clowers. In his affidavit [Court Doc. No. 40-1], Shiles states that, to the best of his knowledge, the Tennessee arrest warrant was signed by an impartial magistrate. Shiles reviewed the Tennessee arrest warrant with Clowers and it was a basis for Clowers signing the plea agreement. After they reviewed the Tennessee arrest warrant, Clowers agreed with Shiles not to challenge its validity. [Court Doc. No. 40-1, pp. 2-3, ¶¶ 4, 10].

Clowers waived this claim by not timely raising it in this District Court and on direct appeal to the Sixth Circuit Court of Appeals. There is a procedural default because Clowers did not present this claim on direct appeal to the Sixth Circuit. Clowers can raise this procedurally defaulted claim for the first time in his 28 U.S.C. § 2255 motion only if he demonstrates either: (1) cause for the procedural default and actual prejudice; or (2) actual innocence on Count One of violating 18

U.S.C. § 2251. *Bousley v. United States,* 523 U.S. 614, 621 (1998); *VanWinkle v. United States*, 645 F.3d 365, 369 (6th Cir. 2011); *Waucaush v. United States*, 380 F.3d 251, 254 (6th Cir. 2004); *Peveler v. United States*, 269 F.3d 693, 698 (6th Cir. 2001).

The Court finds that Clowers has not met his burden of showing cause and prejudice to excuse the procedural default. The procedural default was not caused by ineffective assistance of counsel. Clowers has not met his burden of demonstrating either prong of the *Strickland* test. The performance of his counsel was reasonable did not cause actual prejudice to Clowers. There is no good reason why counsel should have raised this issue on direct appeal. It was not a viable issue for direct appeal. Counsel is not ineffective for not raising and pursuing a meritless argument. *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999); *Brain v. United States*, 2011 WL 1343344, * 11 (E.D. Tenn. April 8, 2011). Counsel's performance did not render the result of the criminal proceeding unreliable or fundamentally unfair. Clowers cannot show there is a reasonable probability that, but for his counsel not raising this issue on direct appeal challenging the validity of the Tennessee arrest warrant, the result of the criminal proceeding would have been different and more favorable to him.

Clowers also cannot show that the procedural default may be excused on the ground of actual innocence. Actual innocence means factual innocence, not mere legal insufficiency. *Bousley,* 523 U.S. at 623; *Schlup v. Delo,* 513 U.S. 298, 321 (1995); *VanWinkle,* 645 F.3d at 369. The record conclusively shows that Clowers is not actually (factually) innocent of violating 18 U.S.C. § 2251 as charged in Count One of the indictment.

Assuming *arguendo* that "Judge Davis" signed the Tennessee arrest warrant, there are additional reasons beyond the waiver and unexcused procedural default why this claim fails and is without merit. The bare allegation by Clowers that Judge Davis was not neutral and detached with

regard to the issuance of the arrest warrant on the complaint of statutory rape is far too vague and conclusory. Clowers does not provide any facts and details to make a threshold showing that Judge Davis was not neutral and detached. There are no facts to establish what "connection," if any, that Judge Davis may have had with the family of victim Ashley Bennett. There are no facts offered to show that Judge Davis was biased or prejudiced against Clowers. Clowers fails to meet his burden of presenting facts to establish that Judge Davis was not neutral and detached when issuing the arrest warrant.

Clowers relies in part on the Code of Judicial Conduct and Rule 3 of the Tennessee Rules of Criminal Procedure which governs what constitutes a valid affidavit of complaint under Tennessee criminal law. Clowers points to the Advisory Commission Comment to Rule 3 of the Tennessee Rules of Criminal Procedure which states that a valid warrant can only be issued by one who is neutral and detached, and capable of making a probable cause determination based on an adequate showing of probable cause, citing *Shadwick v. City of Tampa*, 407 U.S. 345 (1972).

In deciding whether Clowers is entitled to relief pursuant to 28 U.S.C. § 2255, it is immaterial whether there may have been a violation of Tennessee law regarding the issuance of the arrest warrant under Rules 3 and 4 of the Tennessee Rules of Criminal Procedure. It is also immaterial whether Judge Davis did or did not commit a breach of judicial ethics under the Code of Judicial Conduct. The Court does not reach these issues. This Court declines to engage in speculation whether, as a matter of judicial ethics, Judge Davis should have recused or disqualified himself from reviewing the complaint of statutory rape against Clowers and issuing the arrest warrant. Instead, this Court must focus on federal constitutional law. To obtain relief under 28 U.S.C. § 2255, Clowers is required to establish an error of constitutional magnitude under the United States Constitution which had a substantial and injurious effect or influence on the federal criminal

proceeding.

It is well settled that to be valid under the Fourth Amendment to the United States Constitution, a search warrant must be issued by a neutral and detached judge or magistrate based on a finding of probable cause. *Shadwick*, 407 U.S. at 350; *United States v. Montgomery*, 395 Fed. Appx. 177, 185-86 (6th Cir. 2010); *United States v. Parker*, 373 F.3d 770, 772 (6th Cir. 2004). The purpose of an arrest warrant is to allow a neutral and detached judicial officer to assess whether the police have probable cause to make an arrest. *Shadwick*, 407 U.S. at 350; *Montgomery*, 395 Fed. Appx. at 186. The judge must be sufficiently neutral and detached from the activities of law enforcement. *Shadwick*, 407 U.S. at 350-51; *United States v. Barry-Scott*, 251 Fed. Appx. 983, 992-93 (6th Cir. 2007); *Parker*, 373 F.3d at 773; *United States v. Bennett*, 170 F.3d 632, 637 n. 3 (6th Cir. 1999); *United States v. Bowers*, 828 F.2d 1169, 1175 (6th Cir. 1987). Clowers fails to meet his burden of showing that Judge Davis, or any other judicial officer who issued the Tennessee arrest warrant, was not sufficiently neutral and detached from the activities of law enforcement to make an independent judgment whether there was probable cause to arrest under the Fourth Amendment.

Even if Clowers could show that Judge Davis was not neutral and detached and that the issuance of the Tennessee arrest warrant did not comport with the Fourth Amendment, this does not mean that Clowers is entitled to post-conviction relief under 28 U.S.C. § 2255. Where an arrest warrant or search warrant is defective due to the judge's failure to act in a neutral and detached manner, the evidence seized pursuant to the execution of the defective warrant is still admissible in court if it fits within the *Leon* good faith exception to the exclusionary rule. The evidence is admissible and will not be excluded if it was reasonable for the police officers executing the warrant to rely upon the judge's authorization and issuance of the warrant in good faith. *United States v. Leon*, 468 U.S. 897, 922 (1984); *Barry-Scott*, 251 Fed. Appx. at 992-93; *United States v. Caldwell*,

229 F.3d 1154 (Table, text in 2000 WL 1277011, * 6 (6th Cir. Aug. 30, 2000)).

In the present case, there was probable cause to support the issuance of the Tennessee arrest warrant based on the complaint of statutory rape. The arrest warrant was forwarded to police officers in South Carolina who in good faith executed the arrest warrant and placed Clowers under arrest at his residence. To a reasonable police officer, the arrest warrant on its face was sufficient to establish probable cause to arrest Clowers. There are no facts and evidence in the record showing that the South Carolina police officers had any cause or reason to believe that the Tennessee arrest warrant was somehow defective and issued in violation of the Fourth Amendment. It was reasonable for the police officers in South Carolina to rely in good faith upon the judge's authorization and issuance of the Tennessee arrest warrant. The South Carolina police officers subsequently obtained a valid search warrant to search Clowers' residence and seize the incriminating evidence. The *Leon* good faith exception applies here. All of the incriminating evidence that flowed and was derived from the arrest of Clowers in South Carolina is admissible evidence and would not be excluded. *Barry-Scott*, 251 Fed. Appx. at 992-93.

Clowers fails to show any federal constitutional deficiency or error with regard to: (1) the search of his residence in South Carolina pursuant to the valid search warrant issued by a South Carolina judge; and (2) the valid federal warrant issued for his arrest in the federal criminal case. Clowers was properly arrested, indicted, prosecuted, and convicted by the United States government, regardless of whether Judge Davis acted in a neutral and detached manner when issuing the Tennessee arrest warrant.

For all of these reasons, the first claim in the § 2255 motion must be denied.

**B.      Second Claim:  Challenge to Interstate Commerce Nexus and Jurisdiction**

Clowers claims that this Court lacked jurisdiction on the theory that the Commerce Clause

22

in Article I, Section 8, Clause 3 of the United States Constitution does not apply to a single, private individual who made a video for himself with no intention to sell or exchange the video. It is argued by Clowers that his offense conduct did not affect interstate commerce and could not be proscribed by federal law under the Commerce Clause. Clowers raises an as-applied Commerce Clause challenge to his conviction, arguing that the government's failure to establish a sufficient nexus between his conduct and interstate commerce resulted in a lack of federal jurisdiction. He relies heavily on *United States v. Corp*, 236 F.3d 325 (6th Cir. 2001) (*Corp I*), and strives to make his case fit under *Corp I*. Thus, Clowers is asserting a claim of actual (factual) innocence.

Clowers cannot obtain relief under 28 U.S.C. § 2255 based solely on a claim of actual innocence. Generally, actual innocence is not itself a viable, freestanding claim under the United States Constitution. Actual innocence is only a gateway through which a habeas petitioner must pass to have an otherwise barred federal constitutional claim considered on the merits. *Schlup,* 513 U.S. at 315; *Hererra v. Collins,* 506 U.S. 390, 404 (1993); *Murray v. Carrier,* 477 U.S. 478, 496 (1986); *United States v. Gibbs*, 655 F.3d 473, 477 (6th Cir. 2011); *Hodgson v. Warren*, 622 F.3d 591, 601 (6th Cir. 2010); *United States v. Garth*, 188 F.3d 99, 108 (3rd Cir. 1999). The issue of actual of innocence ordinarily arises in the context of a habeas petitioner's efforts to excuse or overcome a procedural default on a federal constitutional claim, or to invoke the doctrine of equitable tolling of a statute of limitation. *Turner v. Romanowski*, 409 Fed. Appx. 922, 926-27 (6th Cir. 2011); *Souter v. Jones*, 395 F.3d 577, 589-90 (6th Cir. 2005); *Anderson v. Bauman*, 2011 WL 4954076, * 2 (W.D. Mich. Oct. 17, 2011).

This claim must be dismissed. The Court rejects the argument that it lacked jurisdiction to enter the judgment of conviction against Clowers. The facts in this case do not support his claim that there was a lack of interstate commerce nexus. This claim is non-jurisdictional and has been

23

waived by Clowers. Moreover, the reliance by Clowers on *Corp I*, 236 F.3d 325 is misplaced. *Corp I* has been overruled and is no longer good law in the Sixth Circuit. When Clowers was indicted, prosecuted, convicted, and sentenced in this Court in 2006 - 2007, *Corp I* had already been overruled and was not good law. To correctly analyze and resolve this as-applied Commerce Clause challenge to the conviction of Clowers, this District Court is guided by more recent Sixth Circuit cases, including *United States v. Corp*, __ F.3d __, 2012 WL 399229 (6th Cir. February 9, 2012) (*Corp II*) which is directly on point.

**1.      Facts Establish an Sufficient Nexus Between the Offense Conduct of Clowers and Interstate Commerce**

There is no valid factual basis for this claim because the facts clearly demonstrate that there was a sufficient nexus between the offense conduct of Clowers and interstate commerce. Clowers misrepresents that his conduct merely involved a single, private individual who made a pornographic video of Ashley Bennett for his own personal use with no intention to sell or exchange the video. He misrepresents and falsely characterizes the facts in this manner in a futile effort to make his case fit under *Corp I*, 236 F.3d 325. The facts in the record show otherwise.

During the investigative interview in February 2004, Clowers admitted that he broadcast over the Internet the pornographic video of then 17-year old Ashley Bennett performing oral sex on him. Bennett corroborated his admission. Clowers videotaped himself having sex with Bennett on several occasions, and Clowers broadcast the pornographic video to other persons via the Internet. *Clowers*, 280 Fed. Appx. at 498. Clowers entered a voluntary and intelligent plea of guilty to Count One, and there was a valid factual basis to support his guilty plea. When Clowers pleaded guilty, he admitted under oath that he filmed minor Ashley Bennett performing sexual acts with him and that he broadcast this child pornography live over the internet via web-cam for viewing by other persons.

Clowers admitted that the made the pornographic videotape of Bennett in Tennessee and Clowers physically transported the videotape it from Tennessee to South Carolina across state lines.

These facts establish the requisite interstate commerce nexus to support his guilty plea and conviction for violating 18 U.S.C. § 2251(a) under Count One of the indictment. All allegations and arguments by Clowers to the contrary are frivolous.

**2.** **Interstate Commerce Nexus Challenge Non-Jurisdictional and Waived by Unconditional Guilty Plea**

Clowers is confused and does not comprehend that his challenge to the interstate commerce nexus does not impact this Court's authority and jurisdiction to adjudicate his federal criminal case. His interstate commerce nexus argument is a non-jurisdictional issue. The Sixth Circuit holds that the interstate commerce nexus requirement is "jurisdictional" only in the sense that, without the nexus between the offense conduct and interstate commerce, there can be no federal crime. It does not affect the jurisdiction of a federal court to adjudicate a federal criminal case. *Corp II*, 2012 WL 399229, at * 3; *United States v. Studabaker*, 578 F.3d 423, 429 (6th Cir. 2009); *United States v. Martin*, 526 F.3d 926, 932-33 (6th Cir. 2008); *United States v. Turner*, 272 F.3d 380, 390 (6th Cir. 2001). When Clowers contends that there was no nexus between his actions and interstate commerce, he is merely arguing that his conduct did not violate 18 U.S.C. § 2251 and cannot constitute a federal crime. This is not the same thing as lack of jurisdiction.

Because the issue whether there was an interstate commerce nexus is non-jurisdictional, Clowers waived his right to challenge this as a result of his guilty plea. Generally, his voluntary and unconditional guilty plea bars any subsequent non-jurisdictional attack on his conviction. *Corp II*, 2012 WL 399229, at * 3; *Studabaker*, 578 F.3d at 429; *Martin*, 526 F.3d at 932; *United States v. Pickett*, 941 F.3d 411, 416 (6th Cir. 1991). When Clowers pleaded guilty, he waived the non-

jurisdictional issue whether there existed an interstate commerce nexus, i.e. waived his as-applied Commerce Clause challenge to his 18 U.S.C. § 2251 conviction. *Corp II*, 2012 WL 399229, at ** 3-4; *Studabaker*, 578 F.3d at 429; *United States v. Sealed Appellant*, 526 F.3d 241, 243 (5th Cir. 2008). Clowers fails to show that there is any good reason to excuse the waiver in this 28 U.S.C. § 2255 proceeding.

Clowers cannot challenge this Court's jurisdiction unless he can establish that Count One in the indictment on its face failed to charge the essential elements of a criminal offense under 18 U.S.C. § 2251. *Corp II*, 2012 WL 399229, at ** 3-4; *Studabaker*, 578 F.3d at 429; *Martin*, 526 F.3d at 934. The Court finds that Clowers cannot prevail on his challenge to jurisdiction because he cannot establish that Count One in the indictment on its face failed to charge the essential elements of a criminal offense under 18 U.S.C. § 2251. The arguments made by Clowers do not bring his conviction within the narrow category of cases that surpass the bar against such non-jurisdictional attacks. *Corp II*, 2012 WL 399229, at ** 3-4.

Through his guilty plea, Clowers admitted the factual basis for federal jurisdiction as charged in the indictment. By pleading guilty to Count One, Clowers admitted that there was an interstate commerce nexus sufficient to support his conviction under 18 U.S.C. § 2251. *Corp II*, 2012 WL 399229, at * 4; *Turner*, 272 F.3d at 390. There was a valid factual basis for his guilty plea.

### 3. **As-Applied Commerce Clause Challenge Without Merit**

Even if we assume *arguendo* that the as-applied Commerce Clause challenge or interstate commerce nexus argument has not been waived by Clowers based on his guilty plea, this claim must be dismissed on the alternative ground that it is without merit. Even absent the waiver, this claim by Clowers fails on the merits. *Corp II*, 2012 WL 399229, at * 4 n. 1.

Clowers cannot obtain any relief based on *Corp I*, 236 F.3d 325. The facts in the present

26

case involving Clowers are starkly different and readily distinguishable from *Corp I*. In *Corp I*, defendant Patrick Corp pleaded guilty to one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B), on the condition that he retained the right to take a direct appeal challenging the constitutionality of his conviction. On direct appeal to the Sixth Circuit, Mr. Corp argued that: (1) 18 U.S.C. § 2252(a)(4)(B) is unconstitutional on its face because it exceeds the authority of Congress under the Commerce Clause; and (2) the statute is unconstitutional as applied to him because his offense conduct did not have a sufficient nexus with interstate commerce. Mr. Corp, who was then 23 years old, took film of pornographic photographs of young females to a pharmacy to be developed. Pharmacy employees contacted the police who began an investigation.

One of the minor females was a 17-year old high school student that Mr. Corp had been dating. The police executed a search warrant at Mr. Corp's residence. The police found sexually explicit photographs in a photo album in his bedroom showing the 17-year old girlfriend and his 26-year old wife engaged in consensual sexual activity. These photographs were taken shortly before the girlfriend turned 18 years old. The girlfriend voluntarily posed for the photographs and did not want Mr. Corp to be criminally prosecuted. There was no allegation or evidence that Mr. Corp ever displayed or distributed any of the photographs to other persons. The photographs were for his own personal use. There was no allegation or evidence showing that Mr. Corp had ever invited other persons to view the photographs. The federal prosecutor conceded that the government did not expect to show that Mr. Corp intended to distribute or did distribute the pornographic photographs and images of the minor female in interstate commerce.

The Sixth Circuit in *Corp I* chose not to declare 18 U.S.C. § 2252(a)(4)(B) facially unconstitutional. *Corp*, 236 F.3d at 332. Instead, the Sixth Circuit concluded that Mr. Corp's purely

private activity was not of a type demonstrated substantially to be connected or related to interstate commerce based on the facts. The Sixth Circuit decided that 18 U.S.C. § 2252(a)(4)(B) was unconstitutional as applied to the unique facts in Mr. Corp's case. In doing so, the Sixth Circuit applied the framework of analysis developed by the Supreme Court in *United States v. Lopez*, 514 U.S. 549 (1995) and *United States v. Morrison*, 529 U.S. 598 (2000) for determining whether a federal statute exceeds the scope of the Commerce Clause power granted to Congress. The Sixth Circuit reversed the conviction because the government failed to make a showing that Mr. Corp's sort of activity would substantially affect interstate commerce. *Id*. at 332-33. In reaching this decision, the Sixth Circuit stated:

> Corp was not alleged to be a pedophile nor was he alleged to have been illegally sexually involved with minors other than [the 17- year old female], who was merely months away from reaching majority. Clearly, Corp was not the typical offender feared by Congress that would become addicted to pornography and perpetuate the industry via interstate connections. Under these circumstances, the government has failed to make a showing that Corp's sort of activity would substantially affect interstate commerce.

*Corp I*, 236 F.3d at 333.

The holding in *Corp I* is of no benefit to Clowers because: (1) the facts in Clowers' case are distinguishable from *Corp I;* and (2) *Corp I* has been overruled and is no longer good law. The Sixth Circuit issued its opinion in *Corp I* in 2001. *Corp I* had been overruled and was no longer good law in the Sixth Circuit before Clowers was indicted, prosecuted, convicted, and sentenced in this Court in 2006 - 2007. There is no reason or rational basis to believe that Clowers in 2006 - 2007 would have decided not to plead guilty on Count One, decided not to execute the plea agreement, and insisted on going to trial on both Counts One and Two of the indictment based on *Corp I* which obviously is not applicable to Clowers' case.

In a futile effort to make his case fit under *Corp I*, Clowers misrepresents and falsely

characterizes the facts in his case. Clowers falsely contends that he is merely a single, private individual who made a pornographic video of Bennett for his own personal use with no intention to sell, exchange, broadcast, or distribute the pornographic video or images to any other person. Clowers does not even come close to making his case fit under *Corp I*, 236 F.3d 325. Unlike *Corp I*, Clowers was involved in exactly the type of sexual exploitation of children and child pornography that Congress prohibits in 18 U.S.C. § 2251(a), and there is a solid nexus between his criminal conduct and interstate commerce.

In *United States v. Ray*, 189 Fed. Appx. 436, 446-48 (6th Cir. 2006) and *United States v. Andrews*, 383 F.3d 374, 376-78 (6th Cir. 2004), the Sixth Circuit faced fact situations similar to Clowers' case. The facts in Clowers' case are more closely analogous to *Ray* and *Andrews,* as compared to *Corp I*. After discussing *Corp I*, the Sixth Circuit in *Ray* and *Andrews* affirmed on direct appeal judgments of conviction under 18 U.S.C. § 2251 because there was a sufficient nexus between the child pornography conduct and interstate commerce. The Sixth Circuit issued its opinion in *Andrews* on September 2, 2004, approximately two and one half years before Clowers was convicted and sentenced in March 2007. Any reasonable, competent attorney researching this question of law on behalf of Clowers in 2006 and 2007 would have found *Ray* and *Andrews,* and recognized that *Corp I* is not applicable to the facts in Clowers' case.

Moreover, the Sixth Circuit decided *Corp I* prior to *Gonzales v. Raich,* 545 U.S. 1 (2005). The Supreme Court's decision in *Raich* on June 6, 2005, significantly changed the framework of legal analysis and effectively rendered *Corp I* obsolete. In *Raich,* 545 U.S. 1, the Supreme Court reaffirmed that Congress has the power under the Commerce Clause to regulate purely local activities that are part of an economic class of activities that have a substantial effect on interstate commerce. *Id.* at 17. The production, distribution, and consumption of commodities are economic

activities. *Id*. at 25-26. The *de minimis* character of individual instances of economic activities is inconsequential, so long as Congress has a rational basis for viewing the economic activity, taken in the aggregate, as substantially affecting interstate commerce. *Id*. at 17, 22.

In the wake of *Raich*, the Sixth Circuit's opinion in *Corp I* became obsolete and was no longer good law. *See Corp II*, 2012 WL 399229, at * 4 n. 1; *United States v. Powers*, 364 Fed. Appx. 979, 981-82 (6th Cir. 2010); *United States v. Bowers*, 594 F.3d 522, 527-30 and n. 4 (6th Cir. 2010); *United States v. Chambers*, 441 F.3d 438, 451-55 (6th Cir. 2006); *United States v. Gann*, 160 Fed. Appx. 466, 472-73 (6th Cir. 2005). With regard to as-applied Commerce Clause challenges to the federal child pornography statutes, the Sixth Circuit today utilizes the federal jurisdiction test employed by the Supreme Court in *Raich*. "[T]he federal child pornography statutes are constitutional as applied when they are part of a comprehensive regulation designed to govern the interstate market of a fungible commodity and Congress rationally believed that the commodity could feed a national market and stimulate demand." *Powers*, 364 Fed. Appx. at 982 (citing *Gann*, 160 Fed. Appx. at 473). Whether the general federal regulation of child pornography encompasses some purely intrastate activity if of "no moment." *Raich,* 545 U.S. at 22; *Powers*, 364 Fed. Appx. at 982; *Gann*, 160 Fed. Appx. at 473.

The as-applied Commerce Clause challenge by Clowers to the validity of his conviction for violating 18 U.S.C. § 2251 fails because his production and distribution of the child pornography involving Ashley Bennett establishes an interstate commerce nexus, regardless of the contended intrastate character of his activities. *Powers*, 364 Fed. Appx. at 982; *Bowers*, 594 F.3d at 528-30. In *Bowers*, 594 F.3d at 530, the Sixth Circuit states: "We cannot envision, after *Raich*, a circumstance under which an as-applied Commerce Clause challenge to a charge of child pornography possession or production would be successful."

30

### C.    Third Claim: Not Informed by Counsel About *Corp I*

It is claimed that defense counsel was ineffective for not informing Clowers about *Corp I*, 236 F.3d 325, and its purported similarity to the federal indictment against Clowers. Clowers contends that he would not have executed the plea agreement and pleaded guilty to Count One if he had known about *Corp I*.

In his affidavit, attorney Shiles states that, to the best of his recollection, he discussed the *Corp I* case with Clowers. Shiles believes that it was Clowers who inquired about *Corp I* and asked Shiles for a legal opinion as to the relevance of *Corp I* to his case. Shiles says that, if they discussed *Corp I* as he recalls it, Shiles would have advised Clowers that his case was distinguishable from *Corp I* since Clowers admitted to putting sexual images on the Internet (and, therefore into interstate commerce) as well as physically transporting pornographic recorded materials across state lines from Tennessee to South Carolina. After they discussed *Corp*, Clowers went ahead and decided to plead guilty and/or not challenge his guilty plea. [Affidavit of Shiles, Court Doc. No. 40-1, p. 1, ¶ 2].

In reply, Clowers disagrees and asserts that he did not discuss *Corp I* with counsel Shiles. Clowers says that he first learned about the Sixth Circuit's opinion in *Corp I* when he arrived at USP Tucson after he was convicted and sentenced. [Court Doc. No. 45, p. 48].

In the final analysis, it makes no difference whether attorney Shiles did or did not discuss the *Corp I* case with Clowers prior to his guilty plea and conviction. It is immaterial because Clowers cannot obtain any relief based on *Corp I*. Assuming *arguendo* that attorney Shiles did not discuss the *Corp I* case with Clowers prior to his guilty plea and conviction, this did not deprive Clowers of his Sixth Amendment right to effective counsel.

Clowers cannot establish either prong of the *Strickland* test. It was reasonable for defense

counsel not to raise an argument on behalf of Clowers based on *Corp I* that there was a lack of interstate commerce nexus and lack of jurisdiction under 18 U.S.C. § 2251. Any such argument by Clowers would have been futile and frivolous. Counsel's performance did not cause Clowers to suffer actual prejudice. Counsel's performance did not render the result of the criminal proceeding unreliable or fundamentally unfair. Clowers cannot show there is a reasonable probability that, but for his counsel not informing him about *Corp I*, the result of the criminal proceeding would have been different and more favorable to him.

The holding in *Corp I* is of no benefit to Clowers because: (1) the facts in Clowers' case are distinguishable from *Corp I;* and (2) *Corp I* has been overruled and is no longer good law in the Sixth Circuit. The Sixth Circuit issued its opinion in *Corp I* in 2001. By the time that Clowers was indicted, prosecuted, convicted, and sentenced in this Court in 2006 - 2007, *Corp I* had been effectively overruled and was no longer good law in the Sixth Circuit. There is no good reason or rational basis to believe that Clowers would have decided not to plead guilty on Count One, decided not to execute the plea agreement, and insisted on going to trial on both Counts One and Two of the indictment based on *Corp I* when it would have been obvious in 2006 - 2007 that *Corp I* was not applicable to Clowers' case.

The Sixth Circuit issued its opinion in *Gann*, 160 Fed. Appx. 466, in 2005, and issued its opinion in *Chambers*, 441 F.3d 438, in 2006 before Clowers executed the plea agreement, pleaded guilty, and was convicted. By the time Clowers pleaded guilty and was convicted, the Sixth Circuit, in the wake of *Raich,* 545 U.S. at 22, had already overruled *Corp I*. In sum, any reasonable, competent attorney researching this question of law on behalf of Clowers in 2006 and 2007, would have found *Raich, Gann*, and *Chambers* and recognized that *Corp I* had been overruled and was no longer good law.

### D. Fourth Claim: Uncalled Potential Defense Witnesses at Sentencing Hearing

Clowers claims his counsel was ineffective for not presenting defense witnesses at the sentencing hearing. Clowers contends that if his "other nieces" had testified at the sentencing hearing, he would not have received the sentence of 360 months imprisonment. The other nieces are identified as Rebecca Havens and Allison Tate. [Court Doc. No. 45, pp. 39-40]. Clowers does not identify any other uncalled witnesses who might have offered testimony favorable to him.

Attorney Shiles states the following in his affidavit. Shiles and his paralegal diligently tracked down any potential witnesses mentioned by Clowers, along with any other witnesses that occurred to Shiles and his paralegal. As demonstrated by the transcript of the sentencing hearing, Clowers, in almost every instance, was vilified by everyone except his father. Shiles points out that just because Clowers did not sexually assault his two other nieces, Rebecca Havens and Allison Tate, this would not in any way have diminished the adverse testimony of several family members and friends who testified that Clowers sexually assaulted and physically threatened them with violence and/or weapons. [Court Doc. No. 40-1, pp. 1-2, ¶ 3].

In reply, Clowers asserts that Rebecca Havens and Allison Tate were often around him. Rebecca Havens would spend as much as two weeks and many weekends with Clowers. Clowers believes that testimony by Rebecca Havens and Allison Tate concerning their treatment by Clowers would have "shown as a bright light, offering some balance to the negative testimony presented by others at sentencing." Clowers says that testimony from Rebecca Havens and Allison Tate during the sentencing hearing would have shown the Court his "truer side" and shown there were some young people with whom Clowers had a positive effect.

This argument based on uncalled witnesses fails. The Court concludes that this fourth claim of ineffective counsel is without merit. Clowers has not met his burden of demonstrating either

prong of the *Strickland* test. Clowers fails to meet his burden of showing that his counsel's performance was deficient and unreasonable. There was no actual prejudice to Clowers. Counsel's performance did not render the result of the sentencing hearing unreliable or fundamentally unfair. Clowers cannot show there is a reasonable probability that, but for his counsel not calling Rebecca Havens and Allison Tate to testify at the sentencing hearing, he would not have received the sentence of 360 months imprisonment.

The vague, conclusory allegations about uncalled witnesses Rebecca Havens and Allison Tate lack sufficient facts to warrant an evidentiary hearing. Clowers does not present sworn affidavits from Rebecca Havens and Allison Tate stating: (1) that they were available to testify in favor of Clowers at the sentencing hearing; and (2) the specific substance of the testimony they would have offered. Clowers is not entitled to an evidentiary hearing because he has not met his burden of making a threshold showing that he has a viable ineffective counsel claim based on alleged uncalled witnesses. His vague and conclusory assertions, which are not substantiated by specific facts with some probability of verity, are not enough to warrant an evidentiary hearing. A conclusory claim without any substantiating allegations of specific facts may be dismissed for failure to state a claim cognizable under 28 U.S.C. § 2255. *Green*, 454 F.2d at 53; *Bain*, 2011 WL 1343344, at * 2; *Jones*, 2010 WL 1882122, at * 2.

Claims of ineffective counsel predicated upon bare allegations of uncalled witnesses are not favored in § 2255 proceedings. Mere unsupported, unsubstantiated allegations about what testimony a potential witness might have given are far too speculative to justify awarding post-conviction relief under § 2255. Any allegation about potential testimony that might have been offered by an uncalled witness is viewed by the Court with great caution. *Evans v. Cockrell*, 285 F.3d 370, 377 (5th Cir. 2002); *Sayre v. Anderson*, 238 F.3d 631, 635-36 (5th Cir. 2001); *United States v. Luciano*, 158 F.3d

655, 660 (2nd Cir. 1998); *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986); *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir. 1983); *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978); *Brain*, 2011 WL 1343344, at * 6; *Smith v. United States*, 2009 WL 124180, * 5 (W.D. Mich. Jan. 16, 2009); *Javaherpour v. United States*, 2007 WL 1041266, ** 2-3 (E.D. Tenn. April 6, 2007), *aff'd*, 315 Fed. Appx. 505 (6th Cir. 2009); *Talley v. United States*, 2006 WL 3422997, * 9 (E.D. Tenn. Nov. 27, 2006).

To present a viable Sixth Amendment ineffective counsel claim based upon an alleged failure of defense counsel to call a witness to testify, Clowers at the very least is required to make an affirmative showing as to four essential factors: (1) the identity/name of the uncalled witness; (2) the availability of the witness to testify; (3) the specific details and substance of what the witness would have testified to at the sentencing hearing; and (4) there is a reasonable probability or likelihood that the testimony of the uncalled witness would have produced a better result for Clowers during sentencing. *Brain*, 2011 WL 1343344, at * 6; *Smith*, 2009 WL 124180, at * 5; *Javaherpour*, 2007 WL 1041266, at * 2; *Talley*, 2006 WL 3422997, at * 9. Although Clowers identifies Rebecca Havens and Allison Tate as uncalled witnesses, he completely fails to establish factors 2, 3, and 4. Clowers fails to show that Rebecca Havens and Allison Tate were available to testify for him at the sentencing hearing, the specific details and substance of what they would have testified to at the sentencing hearing if they had been called, and there is a reasonable probability or likelihood that their proposed testimony would have produced a better result for Clowers and reduced his sentence below 360 months. This is insufficient to make a threshold showing that any potential testimony from uncalled witnesses Rebecca Havens and Allison Tate would have changed the outcome of the sentencing hearing. *Cockrell*, 720 F.2d at 1427; *Brain*, 2011 WL 1343344, at * 6; *Javaherpour*, 2007 WL 1041266, at * 3; *Talley*, 2006 WL 3422997, at * 10.

The decision whether to call a witness to testify is a matter of strategy that falls squarely within defense counsel's domain. The Court's scrutiny of defense counsel's performance is highly deferential. Defense counsel is strongly presumed to have rendered adequate legal assistance to Clowers, and to have made all decisions in the exercise of reasonable professional judgment and sound strategy. *Nix*, 475 U.S. at 165; *Strickland*, 466 U.S. at 689-90; *Skaggs*, 235 F.3d at 268; *Brain*, 2011 WL 1343344, at * 6. Clowers has not come forward with sufficient credible facts and probative evidence to rebut this strong presumption. *Id.*; *Smith*, 2009 WL 124180, at * 6; *Javaherpour*, 2007 WL 1041266, at * 3; *Talley*, 2006 WL 3422997, at * 10.

**E.   Fifth Claim: Sentencing and 1,017 Images Deleted From Computer**

In his amendment to the § 2255 motion [Court Doc. No. 38], Clowers claims that this Court committed an error during sentencing by taking into consideration the 1,017 images deleted from his computer prior to his arrest. This claim of sentencing error is frivolous. There is no sentencing error.

The Sixth Circuit essentially considered this matter on direct appeal. *Clowers*, 280 Fed. Appx. at 500-503. The Sixth Circuit decided that the sentence imposed on Clowers is free of procedural error, and it is both procedurally and substantively reasonable. The Sixth Circuit decided that it was reasonable and correct for the District Court to take into consideration that the computer contained more than 1,000 images of child pornography when the District Court applied the 18 U.S.C. § 3553(a) factors to determine nn appropriate sentence. *Clowers*, 280 Fed. Appx. at 500-501.

18 U.S.C. § 3553(a) provides in part:

> The court, in determining the particular sentence to be imposed, shall consider –
>   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>   (2) the need for the sentence imposed –
>        (A) to reflect the seriousness of the offense, to promote respect

for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct; [and]
(C) to protect the public from further crimes of the defendant.

When applying these factors in 18 U.S.C. § 3553(a)(1) and (2), it was reasonable and correct for this District Court to take into consideration all the images of child pornography that were deleted by Clowers from his computer prior to his arrest in South Carolina. His claim of sentencing error has no merit.

A § 2255 motion is not a substitute for a direct appeal and it cannot do service for an appeal. *Bousley*, 523 U.S. at 621; *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Timmreck*, 441 U.S. at 784; *Regalado v. United States,* 334 F.3d 520, 528 (6th Cir. 2003); *Grant*, 72 F.3d at 506. Clowers cannot utilize a § 2255 motion to relitigate the same issues that were presented and decided in his direct appeal. Issues which were decided by the Sixth Circuit Court of Appeals on direct appeal may not be relitigated in this § 2255 proceeding absent exceptional circumstances, e.g. actual (factual) innocence or an intervening retroactive change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); *DuPont v. United States,* 76 F.3d 108, 110-11 (6th Cir. 1996); *Brain*, 2011 WL 1343344, at * 1. There are no exceptional circumstances here. Clowers has not made out a credible claim of actual (factual) innocence and there is no intervening retroactive change in the applicable law.

Even if we assume *arguendo* that Clowers did not raise this particular nonconstitutional claim of sentencing error on direct appeal, the claim must be dismissed on the alternative ground that it has been waived and cannot be presented under 28 U.S.C. § 2255. Generally, such sentencing challenges must be made on direct appeal or they are waived and cannot be raised for the first time in a § 2255 motion. *Weinberger*, 268 F.3d at 351; *Grant,* 72 F.3d at 505-06. Claims of sentencing

error based on alleged mistakes in the application of the federal sentencing guidelines rarely, if ever, warrant relief from the consequences of waiver under § 2255. *Grant,* 72 F.3d at 506.

When a nonconstitutional claim of sentencing error has been waived by Clowers, he cannot raise it in a § 2255 motion unless he can show an error so egregious that it amounts to a violation of due process. *Jones*, 178 F.3d at 796; *Grant,* 72 F.3d at 506. The Court finds that Clowers has not demonstrated a sentencing error so egregious that it amounts to a violation of his right to due process. The bottom lines is that there is no sentencing error.

Relief from the waiver may be available under § 2255 if Clowers can demonstrate that he has been deprived of his Sixth Amendment right to the effective assistance of counsel. *Weinberger*, 268 F.3d at 351; *Grant*, 72 F.3d at 506. A claim of nonconstitutional sentencing guideline error can be reviewed for the first time under § 2255 if Clowers can show that this claim has been waived or forfeited by the lack of a direct appeal due to ineffective assistance of counsel. The Court concludes that Clowers cannot show that the waiver was caused by ineffective counsel. The performance of counsel was reasonable and did not cause Clowers to suffer actual prejudice. There was no good reason or valid ground for counsel to raise this frivolous claim of sentencing error on direct appeal.

## F. Sixth Claim: Allegations of Ineffective Counsel

In his amendment to the § 2255 motion [Court Doc. No. 38], Clowers makes a multitude of allegations of ineffective counsel, many of which are repetitive. The Court lists below all of these allegations in the same order presented by him. Clowers claims that his counsel was ineffective by:

1. Failing to make the prosecution prove the "Interstate Commerce" element giving the Court jurisdiction by insisting that the prosecution produce evidence that the image or computer files did indeed travel in interstate commerce.

2. Failing to inform Clowers that he faced the possibility of supervised release for life as a

38

result of his guilty plea.

3.  Failing to request a printout or copy of the computers prior to the computers being removed from his residence.

4.  Failing to object to the evidence because there is no proof that the images were on the computers prior to the removal of the computers from his residence.

5.  Failing to make a motion for the Court to consider Ashley Bennett as being an adult. (This contention appears to be based on *Corp I*, 236 F.3d 325 (6th Cir. 2001) which has been overruled and is no longer good law).

6.  Failing to object to the original Tennessee arrest warrant for statutory rape on the ground that it was not signed by an impartial magistrate.

7.  Failing to educate the Court concerning the operation of an Internet Service Provider (ISP) and a "newsgroup" server.

8.  Failing to object to false statements made by the police officers in obtaining the search warrant in South Carolina.

9.  Failing to object to the search of his residence in South Carolina on the ground that the search violated the Fourth Amendment to the United States Constitution and was nothing more than a "fishing expedition" to seek evidence or create evidence of a nonexisting/non-reported crime(s).

10.  Failing to object to inaccuracies in the psychological examination report.

11.  Failing to object to the statements made by Clowers during his interrogation by Sergeant Weeks.

12.  Failing to inform Clowers that he could have a negotiated cap on the amount of time to which he would be sentenced.

13.  Failing to question or challenge the chain of custody of the computer equipment that the

39

South Carolina police officers removed from his residence.

14. Incorrectly advising Clowers that, with regard to the issue of interstate commerce, "the videos were made in Tennessee and ended up in South Carolina, and that is all that matters." (This is based on *Corp I*).

15. Not discussing with Clowers trial strategies and possible defenses to the charge, and merely beginning negotiations for a plea agreement.

16. Displaying a pessimistic attitude which led Clowers to believe there was no possible defense.

17. Failing to inform Clowers that he could have negotiated a "sentence cap" in his plea agreement.

18. Failing to argue that the simple intrastate possession of home-produced sexually explicit pictures of a child, with no intent to distribute the picture interstate or by commercial means is not properly characterized as commercial or economic activity. (This is based on *Corp I*).

19. Failing to argue that home-grown child pornography not intended for distribution or exchange is not economic activity. (This is based on *Corp I*).

20. Failing to argue that a mere passive offender, who has not engaged in large scale pornography distribution, is not punishable under the Commerce Clause in Article I, Section 8, Clause 3 of the United States Constitution. (This is based on *Corp I*).

21. Failing to conduct both an independent legal and factual investigation. If counsel had conducted an independent investigation, counsel would have found that this District Court did not have jurisdiction because: (a) the conduct of Clowers had no effect on interstate commerce; (b) the indictment lacked a federal nexus; (c) the alleged offense conduct is not conduct that the United States government can regulate under the Commerce Clause. (This is based on *Corp I*).

22.  Failing to test this Court's jurisdiction because the offense conduct was not conduct that affected interstate commerce and cannot be regulated by the federal government under the Commerce Clause as a federal crime.  (This is based on *Corp I*).

23.  Failing to investigate Clowers' social and family history.  Counsel failed to discover that Clowers had a troubled life as a youth that might have been considered by the Court as cause to reduce the severity of the sentence.

24.  Failing to raise the fact that the computers in Clowers' possession were Internet servers and he did not exercise sole control of the information contained in the computers.

25.  Failing to subpoena the medical and/or psychological records of Kendra Sebastian-Powers, and not submitting her cuts to forensic examination.

26.  Failing on to ask Kendra Sebastian-Powers on cross-examination during the sentencing hearing why did she run to Clowers if the physical and sexual abuse was as bad as she testified.

27.  Failing to make a motion to dismiss the indictment on the ground that the government presented no evidence indicating that Clowers actually disseminated the computer files/images to anyone, much less that Clowers transported the images in interstate commerce via the Internet.

28.  Failing to challenge the authority of Congress under the Commerce Clause to regulate the non-commercial and wholly intrastate production of child pornography and therefore, as applied to Clowers, 18 U.S.C. § 2251 is unconstitutional.  (This is based on *Corp I*).

29.  Failing to make a motion to dismiss based on the ground that the South Carolina search warrant amounted to an exploratory search.

30.  Failing to challenge the prosecution to prove the nexus to a possible statutory rape in Tennessee and his residence in South Carolina that was searched.

31.  Failing to object to the non-objectivity of the psychological examination due to the fact

41

that the psychological team was familiar with the federal criminal charges against Clowers and this biased the scoring of the exam.

32. Failing to raise the issue that the use by Congress of the "in commerce" language, as opposed to language such as "a facility of interstate commerce," signals a decision by Congress to limit federal jurisdiction and require actual movement between states to satisfy the interstate nexus.

33. Failing to inform the Court that Clowers was confused by the working of and the differences in the laws regarding the age of consent for sexual activity in South Carolina, Tennessee, and the federal government.

34. Failing to object to the vagueness of the affidavit for the South Carolina search warrant which states in part: "and pornographic materials were observed inside the apartment ..." The pornographic materials were never identified by the police officer who executed the affidavit.

35. Failing to challenge the government's assertion that simply because the images may have been on the Internet, this meant that they automatically traveled across state lines, and thus into the jurisdiction of the federal government.

36. Failing to challenge the fact that Sergeant Weeks (South Carolina police officer) transported the computer system in the trunk of her car and was alone with the computer system for an undetermined amount of time.

37. Failing to challenge the evidence gained by the lone computer technician examining the computer system without benefit of any witness in violation of the South Carolina Law Enforcement Division's "two-man policy."

38. Failing to challenge the forensic examination of the computer system, when the South Carolina Law Enforcement Division did not have any official policy or guidelines for examining computer systems.

39. Failing to raise the issue that Clowers was not allowed access to his computer systems in order that he may retrieve evidence from the system log files showing that the pornographic files on the newsgroup server were uploaded by other persons with the ability to request that the computer system automatically download and save the pornographic images for later retrieval by Clowers.

40. Failing to challenge the government's jurisdiction on the basis that his computers were connected to the Internet via cable and not telephone lines belonging to a telecommunications agency.

41. Failing to raise the issue that the computer systems are not a single purpose container and gave no external indication that they contained any pornography.

42. Failing to challenge the government's assertion of jurisdiction over "Cyberspace," as to the fact that Cyberspace is a separate "place" and not physical.

43. Failing to present an argument that there was insufficient evidence to establish probable cause to search his computer systems.

44. Failing to assert that telephone calls to an ISP are considered local calls under the Telecommunications Act of 1996 and are not interstate in nature.

45. Failing to assert that the computer data that would have crossed state lines, if any, would be numbers, ones and zeros, and not a visual depiction.

46. Failing to inform Clowers during the plea negotiation that the plea agreement presented by the government, agreeing to drop and dismiss Count Two of the indictment, would have no impact on sentencing and did not benefit Clowers.

47. Failing to raise the issue that the federal government used evidence obtained solely by the South Carolina and the federal government did not obtain any evidence by a proper, separate

federal investigation.

48. Failing to pursue the fact that Clowers at the time of his questioning or interrogation was denied his medication, a large dose of anti-psychotic and psychotropic medications, which placed Clowers in a state of mental confusion and made him easily susceptible to suggestion.

49. Failing to object to the incorrect statement made in the arrest affidavit which states on page 4, line 11 of the final brief of the plaintiff-appellee, that "Defendant [Clowers] stated that he worked for the Attorney General's Office investigating Internet child exploitation and missing children." What Clowers actually told officer Talkish was that Clowers had worked for the Tennessee Attorney General's office as a network and computer technician.

50. Failing to interview other alleged "victims" to determine the history of Clowers.

51. Failing to raise the issue that the prosecution withheld the results of the police interviews with other alleged "victims" because such evidence would have been in favor of Clowers.

52. Failing to object to the repeated use of the word "we" by Angela Mangrum during the sentencing hearing when speaking for herself the deceased Adam Clowers, as Angela Mangrum could not properly testify as to the feelings of Adam Clowers.

53. Failing to allow Clowers to clarify the incident with his brother, Adam Clowers, in the garage with a drill.

54. Failing to call Jessica Mangrum (the niece sexually abused by Clowers) to testify at the sentencing hearing. The Court notes that Clowers does not bother to explain the specific nature and substance of any testimony that victim Jessica Mangrum could have offered and how her testimony might have been favorable or beneficial to Clowers. Thus, Jessica Mangrum falls into the same category of uncalled witnesses discussed *supra*.

55. Failing to inform Clowers that if an accusation was enumerated and indicated in his

PSR, then the Court could not use the alleged conduct as a separate sentence enhancement, as this would have increased the guideline range to 180 - 210 months (2003 Sentencing Guidelines) which would have been below the maximum and would have been cause for a lower sentence of imprisonment.

56. Failing to ask Angela Mangrum on cross-examination during the sentencing hearing why, if she had been abused by Clowers as she testified, would she leave her daughter, Jessica Mangrum, in the care of Clowers many times both prior to and after the incident of abuse.

57. Failing to point out to the Court at sentencing that during the time period alleged by Kendra Sebastian-Powers, Clowers was employed. As part of the employment Clowers was required to take and pass drug testing, and Clowers was never fired from his job or accused of using drugs.

58. Failing to bring to the Court's attention that prior to his arrest, Clowers was married in 1990 and remained married, plus he was employed and maintained three residences, up until the time he was arrested.

59. Failing, during the cross-examination of Angela Mangrum at the sentencing hearing, to challenge her statement that she thought Clowers continued his alleged violent sexual activity from his youth until his arrest when there is no factual evidence to support her accusation.

60. Failing to object to the reference made by Angela Mangrum during the sentencing hearing that if Clowers is released from prison, he would engage in violent sexual behavior when there is no evidence to support such a statement.

61. Failing to object to the statement made at sentencing: "There are several more victims that were here today." This statement was a generalization and had no factual basis.

62. Failing to clarify the issue raised by the relationship between Clowers and Kendra

Sebastian-Powers on Sentencing Hearing Transcript p. 77, line 20 - page 78, line 7. During this time Clowers knew Sebastian only 6 - 9 months, and he could not have been the cause for her previous and continued counseling.

63. Failing to investigate the statement made by Kendra Sebastian-Powers at sentencing that she was sent to Cumberland Place in Nashville, Tennessee. Counsel should have requested records showing the reason for her confinement in Cumberland Place, and any other juvenile offenses that placed her in confinement.

64. Failing to object to the statement in the government's brief on direct appeal that there is no telling how many victims of Clowers are out there. Failing to object to the statement by Kendra Sebastian-Powers at sentencing that: "He's hurt me and I know he's hurt a lot more people." Clowers contends that these statements are pure speculation and have no factual basis.

65. Failing to object to the violation of his right to due process guaranteed under the Fourteenth Amendment to the United States Constitution regarding the District Court's decision to increase the term of his sentence of imprisonment to the statutory maximum of 360 months based on possible, future criminal offenses which have not been committed.

66. Failing to preserve these claims for direct appeal, and failing to raise and present the aforementioned claims on direct appeal to the Sixth Circuit. Clowers contends that, due to the omissions and deficient performance of his counsel, he received a significantly greater sentence of 360 months imprisonment "without challenge" and without appropriate downward adjustments.

67. Failing to raise the issue that his conduct and the evidence were "divided up" between Tennessee, South Carolina, and the United States of America for the purpose of increasing the time that Clowers would be imprisoned by "stacking" his sentences.

68. Failing to raise the issue of "delay of prosecution" by the federal government in

processing the federal criminal charges against Clowers.

69. Failing to raise the issue of double jeopardy regarding the fact that all of the criminal charges against Clowers were the result of a single arrest and do not fall under the concurrent jurisdiction doctrine.

In addition, Clowers claims ineffective assistance of counsel on his direct appeal to the Sixth Circuit Court of Appeals because he was reduced to using a "brief mill" writing service.

After reviewing the entire record, including the affidavit of attorney Shiles and the reply of Clowers [Court Doc. Nos. 40-1 and 45], the Court concludes that all of these allegations and claims of ineffective counsel are without merit. For each and every one of these allegations and claims of ineffective counsel, Clowers has not met his burden of demonstrating both prongs of the *Strickland* test. Based on the facts and circumstances in this case, the performance of defense counsel was competent and objectively reasonable. Counsel's performance did not render the result of the criminal proceeding unreliable or fundamentally unfair. Clowers fails to demonstrate that his counsel's performance caused him actual prejudice. Clowers cannot show there is a reasonable probability that, but for his counsel's alleged deficient performance, the result of the criminal proceeding would have been different and more favorable to him.

As discussed *supra*, all claims of ineffective counsel, lack of jurisdiction, and lack of a nexus between the offense conduct of Clowers and interstate commerce, which are predicated on *Corp I*, 236 F.3d 325, are without merit.

There is nothing unlawful or unconstitutional about Clowers being investigated, prosecuted, and convicted on different state and federal crimes by the State of Tennessee, the State of South Carolina, and the United States of America arising out of the same conduct and acts since they are separate sovereigns. There is nothing unlawful or unconstitutional about the United States utilizing

47

the investigative information and evidence generated by Tennessee and South Carolina law enforcement officers to investigate, indict, prosecute, and convict Clowers for violating 28 U.S.C. § 2251. It would have been futile for defense counsel to raise these frivolous arguments on behalf of Clowers in this District Court and on direct appeal to the Sixth Circuit.

This Court also rejects the claim that counsel was ineffective for not raising a frivolous argument that the right against double jeopardy protected under the Fifth Amendment to the United States Constitution was violated. Clowers contends that all of the criminal charges against him in the courts of Tennessee, South Carolina, and the United States were the result of a single arrest and do not fall under the concurrent jurisdiction doctrine.

This argument fails. There is no violation here of the Fifth Amendment right to be free from double jeopardy. For purposes of double jeopardy analysis, it is immaterial that his arrest in South Carolina on the Tennessee arrest warrant, and the subsequent search of his residence and seizure of his computers in South Carolina, ultimately led to Clowers being investigated, indicted, prosecuted, and convicted by the United States for violating 28 U.S.C. § 2251. This simply does not constitute double jeopardy under the Fifth Amendment.

Tennessee, South Carolina, and the United States of America are separate sovereigns, and each sovereign entity has the authority to enact and enforce its own criminal laws. There is no double jeopardy under the Fifth Amendment when an individual is prosecuted and convicted for the same act or conduct that violates the criminal laws of dual sovereigns or separate sovereign entities. *Heath v. Alabama*, 474 U.S. 82, 89-93 (1985); *United States v. Moore*, 958 F.2d 646, 650 (6th Cir. 1992). This is commonly known as the dual sovereignty doctrine. "Usually, prosecution in both state court and federal court for offenses that would otherwise constitute the same 'offense' under the Fifth Amendment if tried successively in the same forum, is constitutional under the dual

sovereignty doctrine." *United States v. Deitz*, 577 F.3d 672, 686 (6th Cir. 2009) (citing *Heath*, 474 U.S. at 89-90); *see also United States v. Mardis*, 600 F.3d 693, 696 (6th Cir. 2010). The dual sovereignty doctrine provides that the Fifth Amendment's Double Jeopardy Clause does not apply to criminal prosecutions by separate sovereigns, even if the criminal prosecutions are for the same act or offense. *United States v. Jackson*, 425 Fed. Appx. 476, 482 n. 4 (6th Cir. 2011); *Mardis*, 600 F.3d at 696; *Studabaker*, 578 F.3d at 430; *Deitz*, 577 F.3d at 686; *United States v. Louisville Edible Oil Products, Inc.*, 926 F.2d 584, 587 (6th Cir. 1991).

In sum, there is no Fifth Amendment double jeopardy violation when Clowers is separately prosecuted and convicted in the courts of Tennessee, South Carolina, and the United States for violating the criminal laws of each sovereign entity, even though his prosecution and conviction by each separate sovereign may be based on essentially the same acts and criminal conduct. Consequently, the claimed "failure" of attorney Shiles to raise this frivolous double jeopardy argument on behalf of Clowers does not constitute ineffective assistance of counsel.

Clowers claims counsel was ineffective for not informing him that he could negotiate a binding "cap" or maximum time limit on the term of his sentence of imprisonment in the plea agreement. This claim has no merit. The United States Attorney has no such authority. During the process of negotiating a plea agreement, the United States Attorney and Clowers cannot agree on a "cap" or maximum limit on the sentence that would be binding on the Court. The Court retains the sole authority to determine the length of the sentence of imprisonment.

This Court further rejects the claim that counsel was infective for not raising an argument that Clowers was not allowed access to his computer systems to retrieve evidence from the system log files showing that the pornographic files on the newsgroup server were uploaded by other persons with the ability to request that the computer system automatically download and save the

49

pornographic images for later retrieval by Clowers. As the Sixth Circuit points out in its opinion, this was not just a case involving the downloading of images of child pornography by Clowers from the Internet. Clowers was going to transmit the images of child pornography to other persons on the Internet. *Clowers*, 280 Fed. Appx. at 501.

**VI.** <u>**Conclusion**</u>

The motion by federal prisoner Eugene Wade Clowers for post-conviction relief pursuant to 28 U.S.C. § 2255 is **DENIED and DISMISSED WITH PREJUDICE**.

If Clowers files a notice of appeal, it will be treated as an application for a certificate of appealability which is **DENIED** pursuant to 28 U.S.C. § 2253(c)(2) and Fed. R. App. P. 22(b) because he has failed to make a substantial showing of the denial of a federal constitutional right. The Court will certify pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24 that any appeal from this decision by Clowers would be frivolous and not taken in good faith.

A separate judgment will be entered.

SO ORDERED.

ENTERED: February 16, 2012.

_____/s/ R. Allan Edgar_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE
